16 F.3d 1222
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Eugene Charles HOLLON, Defendant-Appellant.
 No. 92-00110.
 United States Court of Appeals, Sixth Circuit.
 Feb. 11, 1994.
 
 Before: KENNEDY and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Eugene C. Hollon appeals his convictions for various firearms offenses. He challenges the District Court's denial of his motion to suppress and the admission of certain testimony that defendant asserts is inadmissible hearsay evidence. For the reasons stated below, we affirm.
 
 
 2
 Following a jury trial, defendant was found guilty of counts one, two, three, five and six of a seven-count indictment, which charged defendant with the following crimes: possession of firearms by a felon, 18 U.S.C. Sec. 922(g)(1) (Count 1); possession of two firearm silencers, 26 U.S.C. Sec. 5861(d) (Count 2); possession of two firearm silencers not identified by serial numbers, 26 U.S.C. Sec. 5861(i) (Count 3); possession with intent to distribute marijuana, 21 U.S.C. Sec. 841(a)(1) and (b)(1)(D) (Count 4); possession with intent to distribute a quantity of methamphetamine, 21 U.S.C. Sec. 841(a)(1) and (b)(1)(D) (Count 5); receipt of firearms by a controlled substance user, 18 U.S.C. Sec. 922(g)(3) (Count 6); and possession of firearms during a drug trafficking crime, 18 U.S.C. Sec. 924(c)(1), (c)(2) and 21 U.S.C. Sec. 841(a)(1) and (b)(1)(D) (Count 7). Defendant received a 60-month sentence on each count of conviction, to run concurrently with one another, and 5 years of supervised released, was fined $2,000 and ordered to pay special assessment fees totaling $250. Defendant timely appealed.
 
 I.
 
 3
 Two search warrants were issued and executed at defendant's home. The first was issued on October 29, 1991 by a magistrate judge and executed on October 31, 1991. The second was issued in October of 1992 and executed in conjunction with defendant's arrest. The searches pursuant to these warrants resulted in the confiscation of firearms and ammunition; the 1991 search also resulted in the seizure of controlled substances and drug paraphernalia. Items seized during the 1992 search were not used as the basis for any charges in the instant case and were not introduced at trial. Thus, only the first warrant is in issue. Defendant asserts that the affidavit supporting the 1991 warrant could not support a finding of probable cause because it failed to establish the reliability of the confidential informants who supplied the information in the affidavit.
 
 
 4
 We review a district court's factual findings for clear error and its legal determination as to the existence of probable cause on a de novo basis. United States v. Goff, 6 F.3d 363, 365-66 (6th Cir.1993). We review the issuing magistrate judge's determination of probable cause with great deference. Illinois v. Gates, 462 U.S. 213, 236 (1983).
 
 
 5
 The 1991 warrant was supported by an affidavit from Mark Semear, an Alcohol, Tobacco and Firearms ("ATF") special agent. The affidavit provided that Semear had received information from Detective Len Hoyer of the Allegan County, Michigan Sheriff's Department and Detective/Sergeant Ronald Neil of the Michigan State Police. Hoyer and Neil told Semear that they had information from three different sources concerning defendant's alleged firearm activities. The following relevant information is contained in the affidavit:
 
 
 6
 Hoyer learned from a confidential informant ("CI/1"), who had known defendant his entire life, that defendant used drugs and kept firearms at his home. In June of 1991, CI/1 observed defendant firing a "long gun" at his home. At an August 1991 motorcycle meet, CI/1 observed defendant carrying a handgun. On several occasions throughout the summer of 1991, CI/1 had observed an AK-47 firearm at defendant's home. According to Neil, CI/1 had given local law enforcement officers reliable information in the past that had resulted in convictions. Affidavit, p 7; Joint App. at 27.
 
 
 7
 Hoyer met a second confidential informant ("CI/2") who provided him with further information, which Hoyer in turn shared with Semear. CI/2 had observed defendant in possession of firearms in October of 1991. CI/2 witnessed defendant firing an AK-47 in defendant's front yard and at mailboxes across the street. CI/2 also saw several firearms throughout defendant's residence when CI/2 was in defendant's home during October of 1991. CI/2 was "known to Det. Hoyer to be a reliable informant" with no criminal history. Id., p 8; Joint App. at 27.
 
 
 8
 Hoyer met with another informant ("CI/3") who had been in defendant's home two weeks before the October 29, 1991 warrant issued. This person stated that defendant had offered CI/3 cocaine to use and that defendant "did a few lines of cocaine" while CI/3 was present. Defendant showed CI/3 approximately 50 firearms he had in his possession. The alleged array of firepower included the following: "an Uzi, hand grenades, ... a claymore mine, ... plastic explosives, one grenade launcher, approximately 25 handguns kept in a drawer in a bedroom, a holster physically attached to a piece of furniture in the living room containing a loaded pistol, a loaded Derringer ... carried by [defendant] ..., a shotgun in a case under a coffee table in the living room, and many other long guns." Id., p 9; Joint App. at 28. CI/3 stated that most of these firearms were located in the southeast bedroom of the home. CI/3 also provided Hoyer with a detailed description of the floor plan of the home. Finally, CI/3 told Hoyer that fear of the threat posed by the firepower in defendant's home had caused CI/3 to come reluctantly forward with the information. Neither Hoyer nor Neil stated expressly whether CI/3 was reliable or unreliable.
 
 
 9
 Paragraphs 5 and 6 of the affidavit contain allegations of defendant's prior convictions and prior criminal conduct. Defendant complains that such information was set forth without any indication of where the affiant acquired this information. We will make our determination of probable cause without reliance on the information alleged in these two paragraphs of the affidavit.
 
 
 10
 "The rule of probable cause is a practical, non-technical conception affording the best compromise for accommodating ... often opposing interests." United States v. Blakeney, 942 F.2d 1001, 1025 (6th Cir.1991) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)), cert. denied, 112 S.Ct. 881 (1992).
 
 
 11
 An affidavit supporting a search warrant need not establish beyond a reasonable doubt that incriminating evidence will be found on the premises to be searched. The fourth amendment requires no more of the magistrate than that he or she have a substantial basis for concluding that there was probable cause to believe that the search will produce incriminating evidence.
 
 
 12
 Id. (citing Gates, 462 U.S. at 238). In order to have a substantial basis for finding probable cause, the magistrate judge must base the determination upon more than conclusory allegations. Gates, 462 U.S. at 239.
 
 
 13
 The District Court concluded that the affidavit provided the magistrate judge with a "substantial basis" for finding probable cause that contraband would be found in defendant's home:
 
 
 14
 The October 29, 1991, search warrant was based on the affidavit of Mr. Semear, an experienced agent of the Bureau of Alcohol, Tobacco and Firearms. The affidavit relied on information that Mr. Semear received from Det. Hoyer. Det. Hoyer's information consisted of information received from three different sources. Individually, the information provided by these sources may or may not have been sufficient to establish probable cause. For example, this Court notes that the fact that Mr. Hollon possessed a firearm during the summer of 1991 may not be sufficient, absent other information, to determine whether he currently possesses a firearm. In addition, the sources were of varying degrees of reliability. The first confidential informant was said to be reliable and to have provided information leading to convictions in the past; the second confidential informant was said to be reliable, and the third person was not identified as being reliable or unreliable. Nevertheless, collectively, these sources provided corroborating evidence that Mr. Hollon possessed firearms. This evidence is enough for this Court to believe that the Magistrate Judge had a substantial basis for finding probable cause.
 
 
 15
 Joint App. at 45-46 (emphasis supplied). For the reasons given by the District Court, namely, that the independent sources corroborated one another, we believe that the affidavit provided a substantial basis for finding the existence of probable cause. Additionally, the fact that CI/1 had a record of being a reliable and effective informant and the highly detailed nature of CI/3's tip serve to support the magistrate judge's finding.
 
 
 16
 Moreover, even if the District Court had held the warrant invalid, the evidence could have been properly admitted under the good faith exception to the warrant requirement established in United States v. Leon, 468 U.S. 897 (1984). Where the execution of a search warrant, subsequently found to be invalid, is performed "by officers reasonably relying on a warrant issued by a detached and neutral magistrate ... such evidence should be admissible in the prosecution's case in chief." Id. at 913. Defendant does not allege that the magistrate judge was biased, that the warrant was based on a false affidavit, that the affidavit lacked any indicia of probable cause, or that the warrant was facially deficient, see id. at 923. We hold that the District Court did not err in admitting the evidence seized during the October 1991 search.
 
 II.
 
 17
 Next, defendant argues that he was denied a fair trial because the trial court admitted alleged hearsay testimony of ATF Special Agent James Stubbs. Relevant to this issue are counts 1 and 6, which charged defendant with possession of firearms by a felon and with receipt of firearms by a controlled substance user, respectively. An element common to both of these crimes is that the firearms move in interstate commerce. The government sought to establish this element with the testimony of Stubbs.
 
 
 18
 The government presented Stubbs as an expert for the determination of the location of manufacture of firearms. Stubbs was trained to determine the origin of firearms and was the resident expert on this subject in the ATF office in Grand Rapids, Michigan. Stubbs had received special training in determining the origin of firearms and in evaluating whether a firearm has traveled in interstate commerce. Joint App. at 67. Stubbs estimated that he has prepared statements concerning the "interstate nexus" requirement for firearms crimes in approximately 70 to 80 cases over the last two and one-half years. Id. at 69. Defense counsel did not dispute Stubbs' expertise or object to the court's decision to allow him to testify as an expert in this area. Defense counsel did object on the grounds that Stubbs' purported conclusion that the firearms in issue had been manufactured outside of Michigan and thus had traveled in interstate commerce was based upon hearsay information.
 
 
 19
 Defendant argues that while Federal Rule of Evidence 703[1] provides that an expert may base his opinion upon facts or data that are not admissible in evidence, it prohibits the use of inadmissible hearsay as substantive evidence. Defendant asserts that Stubbs' conclusions about the manufacturing origin of the firearms, which he alleges are based upon hearsay information, are inadmissible to establish the interstate transportation element of counts 1 and 6.
 
 
 20
 Stubbs testified that in addition to his experience he relies upon the following when determining where a firearm was manufactured: ATF research materials; consultation with the ATF firearms technical branch; contact with firearms manufacturers; and by looking at the firearms themselves, which have the place of manufacture stamped right on the firearms. Joint App. at 70. In the instant case, however, Stubbs' testimony, which consisted of in-court identification of ten firearms that were seized during the October 31, 1991 search of defendant's home, was based upon information he obtained by looking at the firearms themselves. All ten firearms had a stamp indicating either the name of the manufacturer or the name and location of the manufacturer. Based upon his experience and knowledge, Stubbs testified that he knew the city and state where each manufacturer was located; none of the manufacturers produced firearms in the state of Michigan.[2] As an expert, Stubbs may rely on hearsay evidence when he identifies the place of manufacture of a firearm. Here, he formed his opinion based upon his experience, personal knowledge and examination of the firearms. The evidence was admissible.
 
 III.
 
 21
 Accordingly, the judgment of the District Court is AFFIRMED.
 
 
 
 [1]
 Rule 703. Bases of Opinion Testimony by Experts
 The facts or data in a particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.
 FRE 703.
 
 
 [2]
 Stubbs testified as to the following government exhibits:
 Exhibit Model Place of Manufacture
 No.
---------- ----------------------------------- ------------------------------
 11 Smith & Wesson .357 revolver Springfield, Mass.
 13 Olympic Arms receiver Olympia, Wash.
 15 BWest AK47 Tucson, Ariz.
 17 Ruger Model 1022 New Port, N.H.
 19 Ruger Model 1022 South Port, Conn. or New Port,
 N.H.
 20 Colt 45 Ithica, N.Y.
 21 Ruger Model P85 Prescott, Ariz.
 22 Manuel Escodin Elbar Spain
 23 Fabriquedarms P DeLu C & Belgium
 LiegeBiligque
 24 Smith & Wesson .44 revolver Springfield, Mass.
 Joint App. at 78-85. Count 1 charged defendant with possessing exhibits 20-24; Count 6 charged defendant with receiving exhibits 13, 15, 17, and 19-24.